## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

GASTON DURAN-ROJAS and
MITHAN SINGH,

                Petitioners,          Case No. 25-cv-14051

v.                             Hon. Jonathan J.C. Grey

KEVIN RAYCRAFT, *et al.*,

                Respondents.

_____/

## OPINION AND ORDER GRANTING PETITIONER'S
## WRIT OF HABEAS CORPUS (ECF No. 1)

## I.    INTRODUCTION

Before the Court is Petitioners Gaston Duran-Rojas' and Mithan Singh's (collectively, "petitioners") petition for writ of habeas corpus ("petition"), filed pursuant to 28 U.S.C. § 2241, alleging they are being unlawfully detained at Monroe County Jail, in violation of the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. (ECF Nos. 1, 2.) Immigration removal proceedings are currently pending against both petitioners.

For the reasons below, this Court finds that petitioners' detention pursuant to 8 U.S.C. § 1225(b)(2)(A) and without a bond hearing under 8

U.S.C. § 1226(a) violates their due process rights and **ORDERS** each petitioner to be immediately released, or in the alternative, be given an individualized bond hearing under 8 U.S.C. § 1226(a) before an Immigration Judge ("IJ") **on or before February 5, 2026.** Accordingly, petitioners' petition (ECF No. 1) is **GRANTED**.

## II.   BACKGROUND

Duran-Rojas is a citizen of Mexico who has resided in the United States since 1998. (ECF No. 1, PageID.6.) Duran-Rojas allegedly entered the United States without inspection. (*Id.*, PageID.2, 7, 12–13.) Duran-Rojas owns a home and resides in Waterford, Michigan. (*Id.*, PageID.12, 14.) Duran-Rojas has a common-law partner and four children born in the United States. (*Id.*, PageID.12, 13.) Duran-Rojas has no criminal history, and he has been gainfully employed and paid his income taxes. (*Id.*, PageID.14.)

Singh is a citizen of India who has resided in the United States since 2018. (*Id.*, PageID.7, 14.) Singh allegedly entered the United States without inspection. (*Id.*, PageID.2, 7, 15.) Singh resides in South Ozone Park, New York. (*Id.*, PageID.14.) Singh has no criminal history, and he

has been gainfully employed and paid his income taxes. (*Id.*, PageID.15–16.)

On July 8, 2025, United States Immigration and Customs Enforcement ("ICE"), in coordination with the United States Department of Justice, announced a new governmental policy entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission." (*Id.*, PageID.3, 11–12.) This policy "claims that all persons who entered the United States without inspection are subject to mandatory detention without bond under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended." (*Id.*, PageID.12.)

On September 18, 2025, ICE officers apprehended Duran-Rojas and took him into custody. (*Id.*) Duran-Rojas is currently detained at Monroe County Jail. (*Id.*, PageID.7.) Duran-Rojas is charged with having entered the United States without inspection under 8 U.S.C. § 1182(a)(6)(A)(i). (*Id.*, PageID.12–13.)

On November 13, 2025, ICE officers apprehended Singh in Detroit, Michigan, as he was driving a commercial truck as part of his employment  and took him into custody. (*Id.*, PageID.14–15.) Singh is currently detained at Monroe County Jail. (*Id.*, PageID.15.) Singh is

charged with having entered the United States without inspection under 8 U.S.C. § 1182(a)(6)(A)(i). (*Id.*, PageID.15.)

On December 16, 2025, petitioners filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241, within which they allege violations of the INA and the Fifth Amendment Due Process Clause. (ECF No. 1.) Petitioners assert that, having been charged with entering the United States without inspection and pursuant to 8 U.S.C. § 1226(a), they are entitled to a bond determination. (*Id.*, PageID.4.)

Respondents argue that petitioners' detention is lawful under the INA. Specifically, they assert that petitioners are properly detained pursuant to § 1225(b)(2), a mandatory detention provision, and not § 1226(a), a discretionary detention framework, so their detention does not violate their due process rights. (ECF No. 8.)

## III.  LEGAL STANDARD

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 776 (E.D. Mich. 2025) (quoting 28 U.S.C. § 2241(c)(3)). Two sections of the INA principally govern

detention of noncitizens pending removal proceedings. *See* 8 U.S.C. §§ 1225, 1226.

Section 1225 is a *mandatory* detention provision that states, in relevant part:

> **(2)** INSPECTION OF OTHER ALIENS
> **(A) In general**
>
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" is a noncitizen "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). "[A]dmission" and "admitted" are defined as "the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Section 1226 instead provides for a *discretionary* detention framework. It states, in relevant part:

**(a) ARREST, DETENTION, AND RELEASE**

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1)  may continue to detain the arrested alien; and

(2)  may release the alien on—

(A)  bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General …

8 U.S.C. § 1226(a). Section 1226(c), however, provides for mandatory detention of certain inadmissible or deportable noncitizens who have been charged with, arrested for, convicted of, or admit having committed specific listed crimes.[1] Unlike noncitizens detained under § 1225, and those who are excepted under § 1226(c), "noncitizens arrested and detained under Section 1226 have a right to request a custody redetermination (i.e. [sic] a bond hearing) before an Immigration Judge." *Lopez-Campos*, 797 F. Supp. 3d at 777 (citing 8 C.F.R. §§ 1236.1(c)(8), (d)(1)). "The IJ evaluates whether there is a risk of nonappearance or danger to the community." *Id.* (citing *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006)).

---

[1] This section was added by Congress in January 2025 with the passing of the Laken Riley Act. Pub. L. No. 119-1, 139 Stat. 3 (2025).

## IV.   ANALYSIS

### A.    Proper Respondents

Petitioners files this petition against ICE Detroit Field Office Director Kevin Raycraft ("Raycraft"), Secretary of the United States Department of Homeland Security Kristi Noem ("Noem"), United States Department of Homeland Security ("DHS"), United States Attorney General Pamela Bondi ("Bondi"), and the Executive Office for Immigration Review ("EOIR").

The government argues that the proper respondent to this action is the warden of the Monroe County Jail (the "warden"), who is not named in this suit.[2] (ECF No. 8, PageID.206.) The government relies on *Rumsfeld v. Padilla*, 542 U.S. 426, 435–442 (2004) for the proposition that the warden, who is the "immediate *physical* custodian, as opposed to someone who exercises *constructive legal* custody over the petitioner" is the "proper respondent." *Aguilar v. Dunbar*, No. 2:25-cv-12831, 2025 WL 3281540, at **2–3 (E.D. Mich. Nov. 13, 2025) (emphasis in original) (citing *Padilla*, 542 U.S. at 438–440).

---

[2] Alternatively, the government asserts that Raycraft is the "only proper respondent" "if the Court applies the legal control test (which it should not because that test is inconsistent with *Padilla*)[.]" (ECF No. 8, PageID.207.)

Recently, a court in the Eastern District of Michigan considered this argument, which was raised by the government in a similar habeas petition, and found that, based on *Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003), Raycraft and Bondi were, in fact, properly named as respondents. *See Romero Garcia v. Raycraft*, No. 25-cv-13407, 2025 WL 3252286, at *3, *5 (E.D. Mich. Nov. 21, 2025).

This Court agrees with the reasoning in *Romero Garcia*:

> In *Roman*, the Sixth Circuit held that the INS District Director[3] for the district where a detention facility is located is the proper respondent for a petitioner facing removal proceedings, because the District Director has power over that petitioner. 340 F.3d at 320. In *Padilla*, the Supreme Court rejected that logic of legal "power" over a person's physical custody as a general matter and held that in habeas, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." 542 U.S. at 435. However, while setting a general rule, the Court explicitly left open the question of "whether [a remote supervisory official] is a proper respondent to a habeas petition filed by [a noncitizen] detained pending deportation." *Padilla*, 542 U.S. at 435 n.8. Courts in this district and circuit have therefore found that specifically for habeas proceedings with petitioners facing deportation, *Roman*'s rule still applies, because application of that rule was explicitly left open by *Padilla*.

---

[3] "INS 'District Directors' are the same as today's ICE Field Office Directors." *Romero Garcia*, 2025 WL 3252286, at *2 n.2 (citing *Kholyavskiy v. Achim*, 443 F.3d 946, 948 n.1 (7th Cir. 2006)).

*Romero Garcia*, 2025 WL 3252286, at \*2. Just as in *Romero Garcia*, this Court finds that petitioners are currently in removal proceedings and that Raycraft, who controls the release of petitioners, is properly named a respondent.

Further, "[k]eeping U.S. Attorney General Bondi in the case is also warranted to ensure that Respondents maintain authority to enforce any grant of habeas relief and order that [petitioners] receive a bond hearing or, alternatively, be released even if [petitioners are] transferred out of the district under Raycraft's control." *Velasco-Sanchez v. Raycraft*, No. 2:25-cv-13730, 2025 WL 3553672, at \*2 (E.D. Mich. Dec. 11, 2025) (citing *Romero Garcia*, 2025 WL 3252286, at \*5).

Finally, the Court takes judicial notice that, although not alleged in petitioner's petition, "[a]liens remaining in detention for extended periods are often transferred several times during their detention." *Roman*, 340 F.3d 326. Though the Court finds no mendacity in this case, it takes judicial notice of the fact that these transferers routinely happen in immigration removal proceedings and that these routine transfers could qualify as extraordinary circumstances to find that there is more than one location for jurisdiction. *Id.* at 325–327.

Thus, the Court finds that Raycraft and Bondi are properly named respondents in this action and **DISMISSES** all other respondents, specifically, Noem, DHS, and EOIR.

### B.   *Bautista v. Santacruz* Nationwide Class

The Court is aware of *Bautista v. Santacruz*, No. 5:25-cv-01873, (C.D. Cal.), a California case where the court certified a class action of non-citizens who, like petitioners, are in immigration detention and being denied access to a bond hearing. *See* 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). Respondents argue that "this Court should require that [petitioners] seek bond in immigration court based on the declaratory judgment issued in" *Bautista* and, "if dissatisfied with that process, address [his] complaints with class counsel" in *Bautista*, "before seeking an advisory opinion from this Court that merely grants the same relief that the . . . *Bautista* court has already ostensibly provided." (ECF No. 8, PageID.228.)

Although the Court agrees with the reasoning of the *Bautista* court, the Court need not decide the effects of the *Bautista* decision because it finds that, based on the merits of petitioners' petition, petitioners are entitled to habeas relief.

## C.    Administrative Exhaustion

Before determining the merits of this petition, the Court also addresses respondents' argument that the Court should require petitioners to exhaust administrative remedies before pursuing this habeas petition in this Court. (ECF No. 8, PageID.209–210.) The parties agree that administrative exhaustion is not statutorily required here but disagree whether prudential exhaustion should be applied. The Court finds that exhaustion is unnecessary.

"Where Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). "But where Congress has not clearly required exhaustion, sound judicial discretion governs." *Id.*; *see also Shearson v. Holder*, 725 F.3d 588, 593–594 (6th Cir. 2013). "When neither statute nor regulation says anything about exhaustion, the Supreme Court has held that a court may still impose an *implied* exhaustion rule as long as the rule comports with the statutory scheme." *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019) (emphasis in original) (citations omitted). This is known as prudential exhaustion. *Id.*; *see also Lopez-Campos*, 797 F. Supp. 3d at 778 (internal quotation marks and citation omitted) ("Prudential exhaustion is a judge-

11

made doctrine that enables courts to require administrative exhaustion even when the statute or regulations do not.").

Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (citing *Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015)). "But even if prudential exhaustion would otherwise apply, courts may waive such exhaustion if the 'pursuit of administrative remedies would be a futile gesture' or if the petition presents a 'legal question . . . fit for resolution and delay means hardship.'" *Morales-Martinez v. Raycraft*, No. 25-cv-13303, 2025 WL 3124695, at *2 (E.D. Mich. Nov. 7, 2025) (quoting *Shearson*, 725 F.3d at 594; *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000)).

As other courts in this district have found in similar habeas cases,[4] all three prudential exhaustion factors weigh against requiring exhaustion here. First, "the issues raised in the habeas petition are purely legal in nature and do not require the agency to develop the record." *Lopez-Campos*, 797 F. Supp. 3d at 778. Indeed, as petitioners assert, there are no factual disputes. Moreover, this Court, not the agency, has the expertise to engage in statutory interpretation and analyze constitutional claims. Second, "because [petitioners'] habeas petition includes a due process claim, the administrative scheme . . . is likely futile." *Id.* Third, "administrative review is not likely to change [r]espondent's position that Section 1225(b)(2)(A) applies in this context." *Id.* "The Government's immigration policy makes clear that mandatory detention is the position to be taken, and this is being done in conjunction with the Department of Justice." *Id.*

The Court also waives exhaustion because the pursuit of administrative remedies is futile here and any delay in resolving the legal question here causes hardship to petitioners. As petitioners note,

---

[4] *See e.g.*, *Lopez-Campos*, 797 F. Supp. 3d at 778–779; *Velasco-Sanchez*, 2025 WL 3553672, at *5; *Morales-Martinez*, 2025 WL 3124695, at *2; *Casio-Mejia v. Raycraft*, No. 2:25-cv-13032, 2025 WL 2976737, at *5 (E.D. Mich. Oct. 21, 2025) (collecting cases).

13

requiring them to wait for the Board of Immigration Appeals ("BIA") to deny a bond appeal would be futile. Respondents themselves acknowledge that neither Duran-Rojas or Singh is "ultimately unlikely to obtain the relief he seeks through the administrative process based on a recent decision by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I &N Dec. 216 (BIA 2025), which is binding on the agency and the immigration courts, and which conclusively rejects petitioner's arguments in this case."[5] (ECF No. 8, PageID.209.) *See also Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981) (recognizing that administrative exhaustion may be excused if it would be futile, among other exceptions). Chief Immigration Judge Teresa L. Riley has also recently instructed IJs that *Bautista* "is not a nationwide injunction and does not purport to vacate, stay or enjoin *Yajure Hurtado*. Therefore, *Yajure Hurtado* remains binding precedent on agency adjudicators." (ECF No. 6-4, PageID.116.) Here, where respondents have

---

[5] While BIA decisions may be binding upon the agency at large, they are not binding on this Court. *See* 8 C.F.R. § 1003.1(g)(1) ("[D]ecisions of the [BIA] …are binding on all officers and employees of DHS or immigration judges in the administration of the immigration laws of the United States."); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990) (noting agency rulings are binging on all components of the agency itself but not federal courts); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (holding that federal courts "must exercise independent judgment in determining the meaning of statutory provisions").

14

"predetermined the disputed issue," seeking bond would be futile. *Cooper v. Zych*, No. 09-CV-11620, 2009 WL 2711957, at *2 (E.D. Mich. Aug. 25, 2009); *see also McCarthy*, 503 U.S. at 148 (same).

Moreover, a delay in resolving the legal questions at issue undoubtedly poses hardship to petitioners. The government would have petitioners wait for the BIA to deny a bond appeal, which is not only futile but would take too long. *See, e.g.*, *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025) (finding BIA bond appeals on average take six months to complete). There is no indication any future immigration hearings are scheduled for either Duran-Rojas or Singh.

It is not possible to know how long petitioners will be detained without the opportunity for a bond hearing. Indeed, Courts in this district have consistently held that "[w]hen the liberty of a person is at stake, every day that passes is a critical one, and the Court cannot fault [a detainee] for taking appropriate measures to pursue his claims through the habeas process, with the expectation that his claims would be met with a sense of urgency, and he would receive a decision in a more expedient manner." *See Lopez-Campos*, 797 F. Supp. 3d at 779. The same holds true for petitioners.

Lastly, the Sixth Circuit has held that a due process challenge generally does not require exhaustion since the BIA lacks authority to review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *accord Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) (citation omitted) ("Exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.") Since petitioners' petition includes a non-frivolous due process claim, waiting for a BIA appeal is senseless.

Because the prudential exhaustion factors weigh against exhaustion, and because exhaustion would be futile and not provide petitioners with relief in a timely manner, the Court waives administrative exhaustion and addresses the merits of petitioners' petition.

## D.   Statutory Interpretation

The central question of this habeas petition is whether the mandatory detention framework under §1225(b)(2)(A) or the discretionary detention framework under § 1226 applies to petitioners. Petitioners maintains that "[t]he structure, text, and legislative history of the INA make clear that § 1225 applies only to the inspection of recent

16

arrivals at or near the U.S. border," whereas § 1226 encompasses people like petitioners who have been residing in the interior of the country for years. (ECF No. 2, PageID.35.) Petitioners also argue that the specific text of § 1225(b)(2)(A) further demonstrates that it does not apply to them since neither of them is an "applicant for admission" who is "seeking admission" before an "examining immigration officer." (*Id.*) Respondents counter that petitioners are properly detained under § 1225(b)(2) because they meet every element in the text of the statute; and even if the text were ambiguous, the structure and history of the statute support the agency's interpretation. (ECF No. 8, PageID.210.)

Having reviewed many of these cases, this Court is particularly persuaded by the reasoning in two opinions: *Lopez-Campos*, 797 F. Supp. 3d 771; and *Bautista*, 2025 WL 3289861. For the reasons stated below, the Court finds that petitioners should be considered detained under § 1226(a), and both Duran-Rojas and Singh are thus entitled to a bond hearing.

### i. *Interpretation of the Plain Text*

The Court begins its review on the merits by examining the plain

17

text of the relevant statutory provisions. "'A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation omitted); *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (discussing how courts "must give effect to the clear meaning of statutes as written."). Each word of the statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" *Kentucky*, 23 F.4th at 603 (citations omitted). "Barring unusual cases, '[s]tatutory definitions control the meaning of statutory words.'" *Bautista*, 2025 WL 3289861, at *8  (citation omitted). Applying these canons here, the Court finds that petitioners are unlawfully detained under § 1225(b)(2)(A), though they could properly be detained under § 1226(a).

As the court in *Bautista* reasoned, the INA's definition section "readily resolves" the parties' dispute over statutory interpretation and supports petitioners' reading of the statute. 2025 WL 3289861, at **8–9. Section 1225(b)(2)(A) applies to a noncitizen who is "an applicant for admission," which § 1225(a)(1) defines, in relevant part, as a noncitizen "present in the United States who has not been admitted[.]" Section

1101(a)(13)(A) of the INA's definition section provides that "admitted" means "the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer." Thus, applicants for admission are noncitizens who have not "lawful[ly entered] into the United States *after inspection and authorization by an immigration officer*." *See* § 1101(a)(13)(A) (emphasis added); § 1225(a)(1); *see also Bautista*, 2025 WL 3289861, at **8–9.

Critically, applying the INA's definition of "admitted" to § 1225(b)(2)(A) unambiguously requires applicants for admission to have undergone inspection and authorization by an immigration officer. This is further supported by the title of § 1225, which addresses "[i]nspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." *See Dubin v. United States*, 599 U.S. 110, 120–121 (2023) (internal quotation marks and citations omitted) ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute."). The respondents' definition, which includes all unadmitted noncitizens present in the United States regardless of their proximity to the border and the length of time they have been present in the United

19

States (ECF No. 8, PageID.211–212), is clearly incompatible with the definition set forth in § 1225(b)(2)(A). To adopt respondents' definition, the Court would have to entirely ignore the INA's definition section—specifically, § 1101(a)(13)(A)—which is contrary to what statutory interpretation dictates. Indeed, as respondents state, "'[w]hen a statute includes an explicit definition, [courts] must follow that definition,' even if it varies from a term's ordinary meaning." (ECF No. 8, PageID.211 (quoting *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018)).) Respondents, however, ignore the INA's *explicit* definition of "admitted." The Court cannot do the same.

Importantly, respondents also ignore several words in § 1225(b)(2)(A). *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 431 (2023) (citation omitted) ("'[E]very clause and word of a statute should have meaning.'"). Section 1225(b)(2)(A) states, "[i]n the case of an alien who is an applicant for admission, if the *examining immigration officer* determines that an alien *seeking* admission is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). As courts in this district and

other districts have already explained, "seeking" "implies action." *See, e.g.*, *Lopez-Campos*, 797 F. Supp. 3d at 781; *Monge-Nunez v. Ladwig*, No. 2:25-CV-03043-TLP-atc, 2025 WL 3565348, at *6 (W.D. Tenn. Dec. 12, 2025) (finding that "seeking" suggests action).

Respondents' interpretation is that any noncitizen present in the United States unlawfully, who does not agree to immediately depart, is automatically and perpetually "seeking admission." (*See* ECF No. 8, PageID.213–214.) Such a reading is far too broad, as evidenced by even respondents' own example. Respondents contend that "[i]n removal proceedings, if an unlawfully admitted noncitizen does not accept removal, he can seek a lawful admission . . . For instance, petitioner cannot plausibly challenge his inadmissibility, but he may apply to cancel his removal and adjust his status[.]" (*Id.*, PageID.214.) Indeed, in this example, the noncitizen had to *apply* for cancellation of removal—in other words, he had to actively seek some kind of immigration relief to be considered "seeking admission." This implies, if not concedes, that the noncitizen was not seeking admission when he was detained.

Petitioners do not satisfy the elements of § 1225(b)(2)(A). At the time of apprehension, neither petitioner was presenting himself for

admission at or near the border, nor was he applying for any kind of immigration relief that could possibly render him a noncitizen "seeking admission" by respondents' reading.[6] Moreover, petitioners were never seen by an "examining immigration officer," nor has either of them received a determination that he was "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A). Petitioners note that "immigration officer" is defined in the statute's implementing regulations as "the following employees of the *Department of Homeland Security*[.]" 8 C.F.R. § 1.2 (emphasis added). The definition does not encompass immigration judges, who are employees of the Department of Justice. *Id.*

---

[6] As another court aptly found:

> This understanding accords with the plain, ordinary meaning of the words "seeking" and "admission." For example, someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to [petitioner], because he has already been residing in the United States for several years.

*Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025).

Respondents fail to respond to the argument that an examining immigration officer never determined that either petitioner was not clearly and beyond a doubt entitled to be admitted.

On the other hand, petitioners' circumstances fall squarely within § 1226(a), which is similarly unambiguous. Looking to the plain language of § 1226, which deals with the "apprehension and detention" of noncitizens, it provides that, upon "a warrant issued by the Attorney General, a[] [noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). This provision applies because each petitioner was apprehended and subsequently detained, and removal proceedings are pending against him in immigration court. Therefore, the Attorney General "may continue to detain [him]" and "may release [him]" on bond. *Id.* While this language is discretionary, the statute provides that the noncitizen has the right to request a custody determination or redetermination (i.e., bond hearing) before an IJ. *Id.*; *see also* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).

The Supreme Court's interpretation of when these two statutory provisions apply supports this Court's interpretation. In *Jennings v.*

*Rodriguez*, 583 U.S. 281, 287 (2018), the Supreme Court noted that noncitizens covered by § 1225(b)(1) are those subject to expedited removal, which the government concedes does not apply to petitioners. (ECF No. 8, PageID.215 ("petitioners are not in expedited removal").) Then, the Supreme Court explained that § 1225(b)(2) "serves as a catchall provision that applies to all *applicants for admission* not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287 (emphasis added).

Moreover, in a separate section of the opinion, the Supreme Court recognized that "*[e]ven once inside the United States*, [noncitizens] do not have an absolute right to remain here . . . Section 1226 generally governs the process of arresting and detaining that group of [noncitizens] pending their removal." *Id.* at 288. The Supreme Court concluded,

> In sum, U.S. immigration law authorizes the Government to detain certain [noncitizens] *seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Id.* at 289 (emphasis added). The Supreme Court thus clearly envisioned that § 1225(b)(2) and § 1226 exist in harmony and apply to different groups of noncitizens. Indeed, in its analysis, the Supreme Court did not

24

conflate "applicants for admission" with noncitizens already inside the United States more generally.

Respondents admit that *Jennings* characterized § 1226 as applying to noncitizens present in the United States but then argue that the Supreme Court "made it clear that this category of noncitizens only included those that were admitted" because the Supreme Court cited § 1227(a), which only applies to noncitizens in and admitted to the United States. (ECF No. 8, PageID.222.) Respondents' reading of *Jennings* is remarkably selective. Read in its proper context, the Supreme Court cited § 1227(a) as only an "example" of noncitizens who are present in the United States but who may still be detained under § 1226(a) pending their removal. *Jennings*, 583 U.S. at 288.

For the reasons stated above, under the plain language of § 1225(b)(2)(A), "applicants for admission" do not include noncitizens already in the United States who, like petitioners, were not seeking admission and were not determined inadmissible by an examining immigration officer. Instead, under its plain language, § 1226(a) governs petitioners' detention.

### ii. *Interpretation of the Statutory Framework*

As the court in *Bautista* found, petitioners' and this Court's interpretation of these statutory provisions is the only interpretation that "produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (citations omitted). "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-land Servs., Inc.*, 566 U.S. 93, 101 (2012) (internal quotation marks and citation omitted). "[R]easonable statutory interpretation must account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 321 (2014) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

Respondents' interpretation of the INA would render § 1226(c) superfluous. "Section 1226(a) states that noncitizens detained via a warrant while facing removal proceedings may be released on bond or parole '[e]xcept as provided in subsection (c).'" (ECF No. 2, PageID.40 (quoting 8 U.S.C. § 1226(a)).) In other words, § 1226(c) exempts certain noncitizens from § 1226(a)'s discretionary detention scheme by virtue of those noncitizens' criminal histories. Notably, § 1226(c)(1)(E) authorizes

26

the Attorney General to mandatorily detain noncitizens: (1) who are inadmissible under § 1182(a)(6)(A)—the same ground of inadmissibility with which petitioners have been charged; **and** (2) whose criminal history meets the criteria outlined in § 1226(c)(1)(E)(ii).[7] To accept respondents' reading—that § 1225(b)(2)(A) subjects every noncitizen who did not lawfully enter the country to mandatory detention—"would strip [§] 1226(c) of meaning," *Monge-Nunez*, 2025 WL 3565348, at *6, which the canons of statutory interpretation do not allow. *See Pulsifer v. United States*, 601 U.S. 124, 143 (2024) (citation omitted) (rejecting an interpretation of a statute that "render[s] an entire subparagraph meaningless").

It is also worth noting that Congress only recently added § 1226(c)(1)(E) through the enactment of the Laken Riley Act. *See* Pub. L. No. 119-1, 139 Stat 3 (Jan. 29, 2025). "[W]hen Congress acts to amend a statute, we presume it intends its amendments to have real and substantial effect." *Stone v. INS*, 514 U.S. 386, 397 (1995). "If § 1225(b)(2)

---

[7] The Court also notes that the explicit mention in § 1226 of the same ground of inadmissibility with which petitioners have been charged—i.e., § 1182(a)(6)(A)— undercuts respondents' argument that "there is no 'positive repugnancy' between § 1225(b)(2) and § 1226(a)" and that § 1226(a) only "reaches noncitizens that are not covered by § 1225(b)(2)." (ECF No. 8, PageID.219.)

already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless and this Court, too, will not find that Congress passed the Laken Riley Act to perform the same work that was already covered by § 1225(b)(2)." *Lopez-Campos*, 797 F. Supp. 3d at 784 (internal quotation marks omitted) (quoting *Maldonado v. Olsen*, No. 25-cv-3142, 2025 WL 237441, at *12 (D. Minn. Aug. 15, 2025)).

Beyond just rendering § 1226(c) superfluous, respondents' position "cannot be harmonized with other portions of the INA." *Bautista*, 2025 WL 3289861, at *10. "If the Court were to accept [r]espondents' position that all noncitizens already in the country (regardless of whether they were inspected and authorized by an immigration officer) were 'applicants for admission,' then there would be no possible set of noncitizens to which § 1226(a) would apply." *Id.* The Court cannot construe § 1225(b)(2) in such a way that would make other sections of the INA "inoperative or superfluous, void or insignificant." *Corley*, 556 U.S. at 314 (citation omitted).

"Where statutory language is unambiguous and 'the statutory scheme is coherent and consistent,' the Court must end its inquiry."

28

*Bautista*, 2025 WL 3289861, at *11. Because the Court finds the statutory provisions to be unambiguous and consistent with petitioners' interpretation, the Court does not undertake consideration of other canons of construction, legislative history and intent, or agency practice. *See id.* (*See also* ECF No. 2, PageID.38–39; ECF No. 8, PageID.222–226.)

Accordingly, given the plain text of the statutory provisions, the broader context of the statute, and the INA's recent amendment with the Laken Riley Act, the Court finds that § 1226(a)'s detention framework governs petitioners' detention, and they are entitled to a bond hearing.

### E.    Due Process

The Fifth Amendment to the U.S. Constitution protects every person from being "deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citations omitted).

Respondents do not dispute that petitioners are entitled to due process; instead, respondents contend that they do not present a plausible due process claim. Specifically, respondents assert that

"detention of petitioners under 8 U.S.C. § 1225(b)(2) is required by law that is binding on the agency … [and thus] [t]he agency does not violate [] [petitioners'] due process rights by complying with controlling law." (ECF No. 8, PageID.208.) Respondents also note that "petitioners were given notice of the charges against them, they have access to counsel, they have attended a hearing with an immigration judge, they have the right to request bond and appeal any bond decision by the immigration court, and they have been detained by ICE for a matter of months." (*Id.*)

Had the Court agreed that § 1225(b)(2), as opposed to § 1226(a), applies to petitioners, respondents' argument may have merit. But the Court does not agree. As discussed above, § 1226(a) governs petitioners' detention. Accordingly, they are entitled to the process outlined in § 1226(a)—a bond hearing at which the IJ must make an individualized custody determination. No such hearing has been held for either petitioner. "Therefore, without first evaluating [each petitioner's] risk of flight or dangerousness, his detention is a violation of his due process rights." *Lopez-Campos*, 797 F. Supp. 3d at 785.

Further, "[t]he Sixth Circuit has also applied the balancing test laid out in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine the

30

adequacy of process in the context of civil immigration confinement." *Id.*
Under the *Mathews* test, this Court must consider: (1) "the private
interest that will be affected by the official action;" (2) "the risk of an
erroneous deprivation of such interest through the procedures used, and
probable value, if any, of additional procedural safeguards;" and (3) "the
Government's interest, including the fiscal and administrative burdens
that the additional or substitute procedural requirement would entail."
*Mathews*, 424 U.S. at 335.

All three *Mathews* factors favor petitioners. First, petitioners'
liberty is at stake. Second, the absence of a bond hearing inherently
creates a high "risk of erroneous deprivation" of each petitioner's liberty
right. Third, respondents have not shown, and likely cannot show, that
they have a significant interest in petitioners' continued detention. As
correctly noted by petitioners, it would be nonsensical for "the
government [to] complain about the administrative burden of providing
hearings that it has provided for decades." (ECF No. 2, PageID.120.)
Accordingly, any interest respondents might have in fewer bond hearings
does not outweigh petitioners' liberty interest or the risk of erroneous
deprivation.

Thus, the Court agrees that petitioners' mandatory detention pursuant to § 1225(b)(2) violates their due process rights.

## V.   CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Duran-Rojas' and Singh's petition for writ of habeas corpus (ECF No. 1) is **GRANTED.**

**IT IS FURTHER ORDERED** that Respondents Noem, DHS, and EOIR are **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that Respondents Raycraft and Bondi are enjoined from detaining Duran-Rojas and Singh on the basis of 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that respondents shall immediately release Duran-Rojas, or in the alternative, provide him with an individualized bond hearing under 8 U.S.C. § 1226(a) before an Immigration Judge, **on or before February 5, 2026**.

**IT IS FURTHER ORDERED** that respondents shall immediately release Singh, or in the alternative, provide him with an individualized bond hearing under 8 U.S.C. § 1226(a) before an Immigration Judge, **on or before February 5, 2026**.

**IT IS FURTHER ORDERED** that respondents shall file a status

report with this Court **on or before February 12, 2026** to certify compliance with this order. The status report shall include whether and when each of Duran-Rojas and Singh was released from detention or provided with a bond hearing under 8 U.S.C. § 1226(a). If the bond hearing under 8 U.S.C. § 1226(a) did occur, the status report shall include when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

**SO ORDERED.**

Date: January 29, 2026

**s/Jonathan J.C. Grey**
Jonathan J.C. Grey
United States District Judge

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 29, 2026.

<u>**s/ S. Osorio**</u>
Sandra Osorio
Case Manager